UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **ADAM M. WAYMASTER**, individually and on behalf of all others similarly situated, | Case No. |
| | CLASS ACTION COMPLAINT |
| *Plaintiff*, | DEMAND FOR JURY TRIAL |
| *v.* | |
| **TS SOLUTIONS GROUP LLC**, a Nevada registered company, | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT

Plaintiff Adam M. Waymaster ("Plaintiff Waymaster" or "Waymaster") brings this Class Action Complaint and Demand for Jury Trial against Defendant TS Solutions Group LLC ("Defendant," or "TS Solutions Group") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by placing calls to consumers without consent including calls to phone numbers that are registered on the national Do Not Call Registry ("DNC") and to consumers who have expressly requested that the calls stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Waymaster, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

1

**PARTIES**

1.     Plaintiff Waymaster is a resident of East China, Michigan.

2.     Defendant TS Solutions Group is a company registered in Nevada with its headquarters located Reno, Nevada.

**JURISDICTION AND VENUE**

3.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.     This Court has personal jurisdiction over the Defendant because the Defendant does business in this District and because the wrongful conduct giving rise to this case was directed into this District.

5.     Venue is proper in this District under 28 U.S.C. § 1391(b) because the Plaintiff resides in this District.

**INTRODUCTION**

6.     As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been

fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7.     When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8.     By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9.     The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10.     According to online robocall tracking service "YouMail," 4.5 billion robocalls were placed in September 2024 alone, at a rate of 149.4 million per day. www.robocallindex.com (last visited October 6, 2024).

11.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

13.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

**COMMON ALLEGATIONS**

14.     TS Solutions Group is a service to help consumers terminate timeshare agreements.[3]

15.     TS Solutions Group charges a fee to consumers for its timeshare termination services:



16.     TS Solutions Group places calls to consumers to generate business for itself.

---

[3] https://tselimination.com/home/
[4] https://tssolutionsgroup.com/faq/

17.     Unfortunately, some of these calls from TS Solutions Group are being placed to consumers without consent, including to consumers that registered their phone numbers on the DNC, as per Plaintiff's experience.

18.     TS Solutions Group is owned by Craig Willems and Eric Malloch.[5]

19.     Willems and Malloch also own and operate TS Elimination LLC.[6]

20.     Upon information and belief, TS Solutions Group and TS Elimination are used interchangeably.

21.     To avoid liability for their unlawful telemarketing, Willems and Malloch direct their companies to place calls to consumers through a foreign call center that is believed to be in the Philippines and which uses the name National Consumer Communications.

22.     Plaintiff Waymaster was told by a caller the name National Consumer Communications in a call he received from TS Solutions Group.

23.     Consumers have alleged online that TS Solutions Group and TS Elimination use a call center in the Philippines. For example:

---

[5] https://esos.nv.gov/EntitySearch/BusinessInformation - TS Solutions Group
[6] https://esos.nv.gov/EntitySearch/BusinessInformation - TS Elimination LLC



- "American scammers using a call center in the PHILIPPINES. Don't call them."[8]

- "don't give them any money, these are filipino scammers."[9]

- "Receiving multiple calls from various spoofed numbers. People are in The Philippines that say they are in Las Vegas. She is not able to tell me what state Las Vegas is in or what major freeway in in Las Vegas. I don't know how this scam works but none of the information matches."[10]

24.    Consumers have posted reports online claiming that National Consumer Communications places calls to consumers about terminating a

---

[7] https://www.yelp.com/biz_photos/ts-elimination-las-vegas?select=0PHH5PO6NyC-q8_TGErBJA
[8] https://www.google.com/search?q=%22TS+Elimination
[9] https://www.yelp.com/not_recommended_reviews/ts-elimination-las-vegas
[10] https://timeshareexitcompanies.com/ts-solutions-group-review/

timeshare. In these calls, National Consumer Communications tells the consumer

that they will be called by Mr. Lee at an established date time:



25.     When the consumer is called and connected to Mr. Lee, they are in fact

played a pre-recorded sales presentation by Craig, who is believed to be Craig

Willems, owner of TS Solutions Group and TS Elimination LLC:

---

Johanne

they keep calling me for months ! I took an appointment with Mr. Lee (775-451-9200) at 7h00pm on May 14, when they called I told them that I has an emergency with my kid and couldn't take the call. They called me again this morning and put me online with Creg .. it seamed that they was 5 or 6 other person online ... I found this site while I was online and listening and I hangup. Is it really a scam ?

[14]

Junior is a time share scammer. Operation out of Phillipines. Any of numbers below will connect you to front people in Phillipines.

3178681448
9379983082
9806774642
2157997949

They will lie as much as they can to get you to a "live" presentation by the expert Mr. Lee. However you get put in a fake recorded presentation complete with fake unmuted questions and answers.

Then you get called by Junior. He is a piece of crap liar. They call him bossman along with Ken, Eric and Craig. Junior will tell you they have no affiliation with the Philippines and will lie his ass off how great his company is for people. Problem is he is just spewing lies.

They are shady as hell and Junior is the worst.

[15]

After spending 20 minutes listening to the "live" call it turns out they are with "TS Elimination" and trying to say you can pay them a small fee to eliminate your time share. "Confirmation number" given at the end of the live call is C244.

[16]

26.    Another consumer received a call from a call center in the Philippines. He agreed to a meeting and posted the resulting call recording on Youtube to discuss the termination of a timeshare. The consumer was told that he would be connected to Mr. Lee, but instead he was connected to a pre-recorded presentation by a host

---

[14] Id.
[15] https://scammer.info/t/timeshare-scammers-7028198084-ask-for-junior-and-give-him-hell/43888
[16] Id.

named Craig about timeshare terminations/cancellations on behalf of TS Elimination.[17]

27.     To make matters worse, TS Solutions Group lacks a sufficient opt-out system to ensure that a consumer who notifies TS Solutions Group or its callers to stop calling them will be removed from their contact list.

28.     Consumers have posted many complaints online about unsolicited calls that they received from TS Solutions Group and/or its foreign call center, including:

- "This company calls you over and over and over and over again. I have asked them many many many times to please take me off their call list that I do not want to sell my timeshare, I love my timeshare and dont mind paying for it. They will call me 10 times a day every day no matter what I ask."[18]

- "I received multiple calls at home and on my cell. Each time I informed each caller of the fact I am content with my timeshare and did not require nor solicit this service. After continuous calls on both my cell and home numbers which included telling them to stop calling, the calls became border line harassment. I kept blocking numbers but calls kept coming. When I receive a call from one of the managers and started to inform me of my disdain at the harassing calls, he hung up. This practice needs to stop."[19]

- "Called me this morning asking about my timeshare. Claiming to have gotten my number (that's in my wife's name) from a public timeshare list. I don't have a timeshare. I ask for manager and she hangs up. I call them back 4 times. Second time I got 'Ace' and when I asked for the legal dept he took my head off saying something about 'I don't give you permission to record this call'… mind you I hadn't even said anything about recording anything. I called them one last time and all

---

[17] https://www.youtube.com/watch?v=hp1AWLEXBWo
[18] https://www.bbb.org/us/nv/reno/profile/timeshare-transfer/ts-solutions-group-llc-1166-90025514/customer-reviews
[19] https://timeshareexitcompanies.com/ts-solutions-group-review/

in all got yelled at and hung up on again. I'll give them a couple hours and call back."[20]

- "Same number called me to set up a time to speak with Mr Lee. It is a big scam. I had another one called Vacation Property Excellence! Beware of them as well. Big scam. Not who they say they are. They aren't even in the US. Something needs to be done about this it is getting worse."[21]

- "they keep calling me for months ! I took an appointment with Mr. Lee (775-451-9200) at 7h00pm on May 14, when they called I told them that I has an emergency with my kid and couldn't take the call. They called me again this morning and put me online with Creg .. it seamed that they was 5 or 6 other person online ... I found this site while I was online and listening and I hangup. Is it really a scam ?"[22]

- "During the call, I asked for clarification of name of CSR, who was contacting me (Resort Fee Dept), what company the 'Resort Fee Dept' was affiliated with. I requeste to talk to a supervisor (no supv available, in a meeting), asked for a manager (no manager available, in a meeting), asked for a representative of next higher level of management (no one available & didn't know who that person was &/or was in a meeting). I requested the CSR to contact a Supv, Manager or ANYONE in management provide my phone, name and to contact me when not in a meeting. CSR conveyed he/she would pass on my contact info and request                    to                    contact                    me. I also requested the source whereby they were able to contact me. The response was...'a list'. I requested the 'source' of the list, CSR didn't know                    the                    source. In addition, the background noise was loud, distracting and made it nearly impossible to understand the CSR"[23]

- "buy my timeshare for double market value, upfront fees of $500 commission."[24]

---

[20] https://www.scampulse.com/resort-fee-department-of-national-consumer-communications-reviews
[21] Id.
[22] Id.
[23] Id.
[24] https://www.tellows.com/num/7754519200

- "Call related to Vacation & timeshares received in Phoenix, Arizona"[25]
- "This is a fake timeshare scam by criminals robo-dialing from the Philippines…"[26]

29.     In response to these calls, Plaintiff Waymaster brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF WAYMASTER'S ALLEGATIONS

30.     Plaintiff Waymaster is the sole owner and user of his cell phone number ending in 1815.

31.     Plaintiff Waymaster registered his phone number on the DNC on April 26, 2005.

32.     Plaintiff Waymaster uses his cell phone number for personal use only as one would use a landline telephone number in a home.

33.     Plaintiff Waymaster uses his cell phone number primarily to communicate with friends and family. It is also used to schedule personal appointments and for other household needs.

34.     Plaintiff Waymaster is retired.

35.     Plaintiff Waymaster pays for his cell phone service. The phone number is not reimbursed by a business.

---

[25] Id.

[26] https://lookup.robokiller.com/p/775-451-9200

36.     Plaintiff Waymaster has never owned a timeshare.

37.     On June 24, 2024 at 10:23 AM, Plaintiff Waymaster received an unsolicited call to his cell phone from 248-617-0108.

38.     When Plaintiff answered this call, an employee stated that they were calling about a timeshare.

39.     Plaintiff Waymaster asked the employee to put his cell phone number on a do not call list and ended the call.

40.     When 248-617-0108 is called, an employee identifies the company name National Consumer Communications.[27]

41.     Plaintiff Waymaster was told the same company name in a call he received at the end of September, 2024.

42.     The employee will then ask a few qualifying questions and will try to set-up an appointment for the consumer with someone named Mr. Lee.

43.     The employee will then explain that they will call from 775-451-9200.

44.     When the call on behalf of Mr. Lee is received, an employee from the Philippines confirms that the meeting will happen, and then a pre-recorded message is played for the consumer stating that the meeting host is Craig and the company name TS Solutions Group is specifically mentioned many times.[28]

---

[27] Based on an investigation conducted by Plaintiff's attorneys.
[28] All based on an investigation conducted by Plaintiff's attorneys.

45.     Upon information and belief, Craig is Craig Willems, co-owner of TS Solutions Group.

46.     The recording explains that there is a cost for a consumer to terminate a timeshare plan and that this is done through a network of attorneys that TS Solutions Group works with.

47.     Despite his clear stop request, Plaintiff Waymaster received 2 more calls from 248-617-0108 to his cell phone on:

- September 10, 2024 at 8:09 PM

- September 11, 2024 at 9:10 AM

48.     On September 11, 2024 at 1:19 PM, Plaintiff Waymaster received a 4th unsolicited call to his cell phone from 248-617-0108.

49.     When Plaintiff answered this call, an employee stated that they were calling about a timeshare.

50.     As with the previously answered call, Plaintiff asked the employee to add his number to a do not call list and the call was ended.

51.     On September 12, 2024 at 11:21 AM, Plaintiff Waymaster received a 5th unsolicited all to his cell phone from 248-617-0108.

52.     When Plaintiff answered this call, an employee stated that they were calling about a timeshare.

53.     Plaintiff Waymaster told the employee to stop calling his cell phone number and ended the call.

54.     On September 24, 2024 at 5:17 PM, Plaintiff Waymaster received a 6th unsolicited call to his cell phone from 248-617-0108.

55.     This call was not answered.

56.     On September 25, 2024 at 11:00 AM, Plaintiff Waymaster received a 7th unsolicited call to his cell phone from 248-617-0108.

57.     When Plaintiff answered this call, an employee stated that they were calling about a timeshare.

58.     Plaintiff Waymaster told the employee to stop calling his cell phone number and ended the call.

59.     On September 26, 2024 at 9:01 AM, Plaintiff Waymaster received an 8th unsolicited call to his cell phone from 248-617-0108.

60.     When Plaintiff Waymaster answered this call, an employee stated that they were calling about a timeshare.

61.     Plaintiff Waymaster told the employee to stop calling his cell phone number and to add his cell phone number to a do not call list.

62.     On September 30, 2024 at 12:05 PM, Plaintiff Waymaster received a 9th unsolicited call to his cell phone from 248-617-0108.

63.     This call was not answered.

64.     On September 30, 2024 at 4:06 PM, Plaintiff Waymaster received a 10th unsolicited call to his cell phone from 248-617-0108.

65.     When Plaintiff Waymaster answered this call, an employee stated that they were calling about a timeshare.

66.     Plaintiff Waymaster asked the employee where the company is located and was told it is located in Nevada, which is where TS Solutions Group is located.

67.     During the call, the employee continually asked Plaintiff qualifying questions about a timeshare.

68.     Plaintiff Waymaster has never provided his cell phone number to TS Solutions Group or given them consent to call him.

69.     Plaintiff Waymaster does not and has never owned a timeshare.

70.     The unauthorized solicitation telephone calls that Plaintiff Waymaster received from or on behalf of Defendant TS Solutions Group have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

71.     Seeking redress for these injuries, Plaintiff Waymaster, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

72.    Plaintiff Waymaster brings this action pursuant to Federal Rules of

Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following

Classes:

> **<u>Do Not Call Registry Class:</u>** All persons in the United States who from
> four years prior to the filing of this action through class certification (1)
> TS Solutions Group called more than one time, (2) within any 12-month
> period, (3) where the person's residential telephone number had been
> listed on the National Do Not Call Registry for at least thirty days, (4)
> for substantially the same reason Defendant called Plaintiff.

> **<u>Internal Do Not Call Class:</u>** All persons in the United States who from
> four years prior to the filing of this action through class certification (1)
> Defendant TS Solutions Group called more than one time on their
> residential telephone number, (2) within any 12-month period (3) for
> substantially the same reason Defendant called Plaintiff, (4) including at
> least once after the Defendant's records reflect the person requested that
> they stop calling.

73.    The following individuals are excluded from the Classes: (1) any Judge

or Magistrate presiding over this action and members of their families; (2)

Defendant, its subsidiaries, parents, successors, predecessors, and any entity in

which either Defendant or their parents have a controlling interest and their current

or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons

who properly execute and file a timely request for exclusion from the Classes; (5)

the legal representatives, successors or assigns of any such excluded persons; and

(6) persons whose claims against the Defendant have been fully and finally

adjudicated and/or released. Plaintiff Waymaster anticipates the need to amend the Class definition following appropriate discovery.

74.   **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

75.   **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)   Whether Defendant's conduct violated the TCPA;

(b)   Whether Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(c)   whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d)   whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

76.     **Adequate Representation**: Plaintiff Waymaster will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Waymaster has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Waymaster and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Waymaster nor his counsel have any interest adverse to the Classes.

77.     **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Waymaster. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's

misconduct on an individual basis. A class action provides the benefits of single

adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Waymaster and the Do Not Call Registry Class)**

78.    Plaintiff repeats and realleges the prior paragraphs of this Complaint

and incorporates them by reference herein.

79.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c),

provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a]

residential telephone subscriber who has registered his or his telephone number on

the national do-not-call registry of persons who do not wish to receive telephone

solicitations that is maintained by the federal government."

80.    Any "person who has received more than one telephone call within any

12-month period by or on behalf of the same entity in violation of the regulations

prescribed under this subsection may" may bring a private action based on a

violation of said regulations, which were promulgated to protect telephone

subscribers' privacy rights to avoid receiving telephone solicitations to which they

object.  47 U.S.C. § 227(c).

81.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to

be initiated, telephone solicitations to telephone subscribers such as Plaintiff

Waymaster and the Do Not Call Registry Class members who registered their

respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

82.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Waymaster and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

83.    As a result of Defendant's conduct as alleged herein, Plaintiff Waymaster and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

84.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

<u>**SECOND CLAIM FOR RELIEF**</u>
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Waymaster and the Internal Do Not Call Class)**

85.    Plaintiff repeats and realleges paragraphs 1-77 of this Complaint and incorporates them by reference herein.

86.    Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such

21

person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900

number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

87.     Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

88.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

89.     Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of

Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Waymaster requests a jury trial.

Respectfully Submitted,

**ADAM M WAYMASTER**, individually
and on behalf of all others similarly situated,

DATED this 25th day of December, 2024.

By: /s/ *Stefan Coleman*
Stefan Coleman
COLEMAN PLLC
18117 Biscayne Blvd
Suite 4152
Miami, FL 33160
(877) 333-9427
law@stefancoleman.com

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

George Blackmore* (P76942)
Direct: 248-847-0580 | Fax: 855-744-4419
Blackmore Law PLC | www.blackmore.law
1129 West 14 Mile Rd. #1006
Clawson, MI 48017
george@blackmore.law

*Attorneys for Plaintiff and the putative
Classes*

*\*Local counsel*

25